Morgan E. Pietz (SBN 260629)
  morgan@pstrials.com
Cyrus E. Shahriari (SBN 292166)
  cyrus@pstrials.com
PIETZ & SHAHRIARI, LLP
9454 Wilshire Blvd., Suite 310
Beverly Hills, CA 90212
Telephone (310) 424-5557

Adam C. Sherman (SBN 224979)
VORYS, SATER, SEYMOUR AND PEASE LLP
301 East Fourth Street
Suite 3500, Great American Tower
Cincinnati, Ohio 45202
Telephone: (513) 723-4680
Facsimile: (513) 852-8468
Email: acsherman@vorys.com

Attorneys for Plaintiff
SGII, INC. d/b/a SENEGENCE INTERNATIONAL, INC.

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| SGII, INC., d/b/a SENEGENCE INTERNATIONAL, INC., a Delaware corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>SIARA MARTIN, an individual,<br><br>          Defendant. | Case No:<br><br>**COMPLAINT FOR:**<br> **(1) TRADEMARK INFRINGEMENT**<br> [15 U.S.C. § 1114 and 15 U.S.C. § 1125(a)]**;**<br> **(2) TRADE DRESS INFRINGEMENT**<br> [15 U.S.C. § 1125(a)]**;**<br> **(3) FALSE ADVERTISING**<br> [15 U.S.C. § 1125(a)(1)(B)];<br> **(4) UNFAIR COMPETITION**<br> [15 U.S.C. § 1125(a)(1)(A)];<br> **(5) COMMON LAW TRADEMARK INFRINGEMENT;**<br> **(6) TORTIOUS INTERFERENCE WITH CONTRACTS;**<br> **(7) FALSE ADVERTISING**<br> [Cal. Bus. & Prof. Code § 17500]**; and**<br> **(8) UNFAIR COMPETITION**<br> [Cal. Bus. & Prof. Code §§ 17200, et seq.]<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff SGII, Inc. d/b/a SeneGence International, Inc. ("SeneGence") brings this action against Defendant Siara Martin ("Martin") for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a); trade dress infringement in violation of  15 U.S.C. § 1125(a); false advertising in violation of 15 U.S.C. § 1125(a)(1)(B); unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A); common law trademark infringement; tortious interference with contracts; false advertising in violation of Cal. Bus. & Prof. Code § 17500*, et seq.*; and unfair competition in violation of Cal. Bus. & Prof. Code § 17200, *et seq.* In support of its complaint, SeneGence alleges as follows:

## PARTIES

1.      SeneGence is a corporation, organized under the laws of Delaware, with its principal place of business located in Foothill Ranch, California.

2.      Martin is an individual who, on information and belief, resides at 184 Country Club, Tooele, UT 84074 and may be served with process there or anywhere else she may be found.

## JURISDICTION

3.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, 28 U.S.C. § 1338, and 28 U.S.C. § 1367. SeneGence's federal claims are predicated on 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a), and its claims arising under the laws of the State of California are substantially related to its federal claims such that they form part of the same case or controversy.

4.      This Court has personal jurisdiction because Martin has expressly aimed tortious activities toward the State of California and established sufficient minimum contacts with California by, among other things, advertising and selling infringing materials to consumers within California through highly interactive commercial websites and other means with the knowledge that SeneGence is located in California and is harmed in California as a result of Martin's sales of infringing materials.  Martin has known that SeneGence is located in California, among other reasons, because she used to be under contract with SeneGence as a SeneGence Independent Distributor.  SeneGence's claims arise out of Martin's sales of infringing materials to California residents.

## VENUE

5.      Venue is properly founded in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to SeneGence's claims occurred within this judicial district or, in the alternative, because Martin is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

### SeneGence and its Trademarks

6.      SeneGence develops, manufactures, markets, and sells a variety of high-quality beauty and makeup products.  These products include, but are not limited to: LipSense® Long Lasting Liquid Lip Color, ShadowSense® eye shadow and related products, EyeSense® eye liner, LashSense® mascara, UnderSense® eyelash primer, LashExtend eyelash enhancer, BrowSense® eyebrow color, BlushSense® blush, MakeSense® foundation and related products, SeneDerm® skin care products, and Fooops!® makeup remover products.

7.      SeneGence sells its products exclusively through Independent SeneGence Distributors ("Distributors"), who must enter into contracts with SeneGence to be permitted to sell SeneGence products.

8.      SeneGence markets and sells its products throughout the United States, including in California. SeneGence devotes a significant amount of time, energy, and resources to protecting the value of its brands, products, and reputation throughout the country and around the world. By selling its products exclusively through Distributors, SeneGence ensures that its customers receive only the highest-quality products and are able to make informed purchasing decisions based on accurate SeneGence-approved marketing materials.

9.      To promote and protect its brands of beauty products in the United States, SeneGence has registered numerous trademarks with the United States Patent and Trademark Office. These trademarks include, but are not limited to: SENEGENCE® (U.S. Trademark Registration No. 2,668,790), LIPSENSE® (U.S. Trademark Registration No. 2,362,204), SHADOWSENSE® (U.S. Trademark Registration No. 5,028,643), EYESENSE® (U.S. Trademark Registration No. 2,995,466); LASHSENSE® (U.S. Trademark Registration No.

2,644,059), UNDERSENSE® (U.S. Trademark Registration No. 5,028,644), BROWSENSE® (U.S. Trademark Registration No. 2,644,060), BLUSHSENSE® (U.S. Trademark Registration No. 5,028,642), MAKESENSE® (U.S. Trademark No. 5,070,027), SENEDERM® (U.S. Trademark Registration No. 2,706,621), and FOOOPS! ® (U.S. Trademark Registration No. 2,621,363) (collectively, the "SeneGence Registered Trademarks").

10.     The registration for each of the SeneGence Registered Trademarks is valid, subsisting, and in full force and effect.

11.     SeneGence actively uses and markets the SeneGence Registered Trademarks in commerce.

12.     Due to the quality and exclusive distribution of SeneGence products, and because SeneGence is recognized as the source of high quality products, the SeneGence Registered Trademarks have substantial value.

13.     SeneGence also actively uses and markets SeneGence products with a stylized "S" trademark (the "'S' trademark"). The distinguishing elements of this mark include a silhouette of a woman in profile and a depiction of a flower drawn into the shape of the letter "S," as can be seen in the following screenshots:



**SeneGence and its Trade Dress**

14.     Nearly all SeneGence products feature the same design or trade dress, including but not limited to LipSense, ShadowSense, EyeSense, LashExtend, BrowSense, BlushSense, MakeSense, Foops!, and SeneDerm products. SeneGence uses the same trade dress across its brands so that it can market its products as a cohesive team of products and ensure that consumers immediately associate the products with SeneGence when they see all or a portion of the trade dress (hereinafter, the "SeneGence Trade Dress").

15.     The SeneGence Trade Dress is comprised of a tube, applicator, or container for beauty products that features three or more of the following elements: (a) a label with thin, scripted writing in the center and a thick gold strip on at least one end of the label; (b) gold, blue or clear caps; (c) solid colors in the background of the label, which vary according to the product; (d) the name of the product (for example, LipSense) in large thin, scripted font, and the shade of the product or other product information in smaller thin, scripted font.

16.     Examples of the SeneGence Trade Dress can be seen in the following screenshots from the SeneGence website:





17. Examples of MakeSense, Foooops, and SeneDerm products can be seen in the following screenshots from the SeneGence website:

18. SeneGence's "S" trademark appears on the label of many SeneDerm products. This trademark has a distinctive style that includes the shape of a woman's face in profile and the shape

of a flower drawn into the "S." Examples of some of the SeneDerm products that include the "S"

trademark on their product labels can be seen in the following screenshots from the SeneGence

website:



**SeneGence Requires Distributors to Enter Into Contracts that Prohibit Them from Using Advertising, Marketing, and Promotional Materials Not Approved by SeneGence**

19.     Distributors are not permitted to sell SeneGence products unless they enter into

contracts with SeneGence which impose certain limitations on how, to whom, and where

Distributors may sell SeneGence products.  These contracts include the SeneGence Distributor

Application and Agreement, the SeneGence Distributor Policies and Procedures Guide, and other

materials incorporated into the Distributor Application and Agreement (collectively, "Distributor

Agreements").

20.     SeneGence's Distributor Agreements provide, among other obligations and

restrictions, and in exchange for other benefits provided by the Agreements (including the ability

to purchase and resell SeneGence products), that Distributors may only use promotional,

marketing, or advertising materials that have been issued by SeneGence or that SeneGence has

approved in writing.  SeneGence prohibits Distributors from using unapproved promotional,

marketing, and advertising materials because it devotes substantial time and resources to creating

marketing materials and wants to control how its products are depicted and represented to the

public.

21.     Under SeneGence's Distributor Agreements, Distributors are also prohibited from obtaining promotional materials featuring copyrighted or trademarked material from any source other than SeneGence, unless SeneGence gives prior written approval.  Distributors are further prohibited from using SeneGence trademarked or copyrighted material online or in social media without prior written approval from SeneGence.

**Martin's Unlawful Sales of Infringing Materials**

22.     Martin used to be a Distributor.  As a Distributor, Martin agreed to all of the obligations and restrictions in the Distributor Agreement.  In June 2018, Martin ceased to be a Distributor and lost the right to resell SeneGence products.

23.     Beginning while she was a Distributor and continuing to the present, Martin has taken and displayed photographs of products bearing the SeneGence Registered Trademarks, the "S" trademark, and/or the SeneGence Trade Dress ("Infringing Photographs").  Martin takes these photographs so that she can sell them to Distributors for Distributors to use as advertising, marketing, and promotional materials with the SeneGence products they sell.

24.     SeneGence has never approved Distributors to use the Infringing Photographs as advertising, marketing, or promotional materials.  In fact, SeneGence has repeatedly informed Martin that Distributors are *not permitted* to use the photographs and other promotional materials Martin has created to assist in their sales of SeneGence products.  Accordingly, through her sales of the Infringing Photographs, Martin is inducing and causing Distributors to use forbidden promotional, marketing, and advertising materials in violation of their Distributor Agreements.

25.     Martin either has advertised or is currently advertising for sale Infringing Photographs on at least six websites: (1) www.patreon.com/siaraspics/posts ("Patreon");  (2) https://siaraspics.pixieset.com ("Pixieset"); (3) www.facebook.com ("Facebook") via two Facebook groups, "Love Your Lips with Siara" and "Siara's Pics"; (4) www.pinterest.com ("Pinterest"); (5) www.instagram.com ("Instagram"); and (6) on www.youtube.com ("YouTube").

26.     On each of these websites, Martin has displayed or is currently displaying Infringing Photographs that depict SeneGence products, the SeneGence Registered Trademarks,

the "S" trademark, and the SeneGence Trade Dress. The following screenshots show examples of some of the Infringing Photographs that Martin has displayed or is displaying on these websites:

    a.   Close-up photographs of a mouth wearing a shade of LipSense and biting down on a tube of LipSense in that shade, in which a portion of the LIPSENSE trademark and the SeneGence Trade Dress are visible and identifiable:





    b.   Close-up photographs of an eyelid wearing a shade of ShadowSense, with a caption listing the name of the shade and the SHADOWSENSE trademark:





c.  Photographs of a depiction of various styles of mascara and eye lash primer, labeled with the UNDERSENSE and LASHSENSE trademarks:



d. Photographs of a clear, rectangular container holding several tubes of LipSense in various shades, in which the LIPSENSE trademark, SENEGENCE trademark, and the SeneGence Trade Dress are visible and identifiable:





e.  A graphic that includes and compares dozens of photographs of lips, each wearing and labeled with a different shade of LipSense, titled "lipsense By SeneGence, Graphic by Siara's Pics, 50 colors + 12 glosses" and categorized as "poster printables":



f. Photographs of a hand holding a tube of LipSense lip gloss, in which the LIPSENSE trademark, SENEGENCE trademark, and the SeneGence Trade Dress are visible and identifiable:



g. Photographs of a hand holding a tube of powder makeup, a bottle of MakeSense foundation, a bottle of SeneDerm product, or a bottle of Fooops! product, in which the SeneGence Registered Trademarks, the "S" trademark, and/or the SeneGence Trade Dress are visible and identifiable:



POWDER



MAKESENSE





REMOVERS



h.  Photographs of SeneGence products against a white background, in which the SeneGence Registered Trademarks, the "S" trademark, and the SeneGence Trade Dress are visible and identifiable:





i.   Photographs of SeneGence products surrounded by leaves or flowers, in which the SeneGence Registered Trademarks, the "S" trademark, and the SeneGence Trade Dress are visible and identifiable and the products are collectively described as the "floral collection":








j.   A collection of two merged photographs, one of a hand holding a tube of LashSense in which the SeneGence Registered Trademarks and the "S" trademark are visible and identifiable, and a second photo of an eye wearing the product with the caption "LashSense + UnderSense":



k.   Close-up photos of an eye and eyebrow labeled with the BROWSENSE mark:



27.     On Patreon, website visitors can become "Patrons" of content producers on Patreon if they pay a subscription fee.  Once the fee is paid, "Patrons" can view posts and download photographs uploaded by the content producers whom the Patrons sponsored.

28.     Martin's account on Patreon is called "Siara's pics," and her user homepage states that "Siara Martin is creating photographic and marketing materials."  Until February 2019, her homepage included the statement: "I first became very successful in the company I was affiliated with utilizing my own photography. The images were so popular I quickly had a following just for them. Now I'm here to offer those images for you and your own businesses to succeed even moreso."  Martin later edited this statement, which, as of the time of filing, reads: "I first became very successful in the company I was affiliated with utilizing my own photography. The images were so popular I quickly had a following just for them. Now that I am no longer affiliated with that company (I am not a distributor!) I'm here to offer those images for those who may be interested." *See* https://www.patreon.com/siaraspics.

29.     As of the time of filing, there are approximately 2473 Patrons of Martin's account and her homepage promises that "If we get to 3500 patrons I'll send someone and a friend to Hawaii!"

30.     Martin linked her Pixieset page, also called "Siara's pics," to her Patreon page so that Pixieset visitors could more easily become "Patrons" on Patreon and gain access to more

Infringing Photographs and posts about the photos. She also posted a video, one of few posts viewable by non-Patrons, to her Patreon page showing Patrons how to download content from Pixieset through the Patreon app.

31.     Martin has also created many videos on YouTube that feature her applying SeneGence products and direct viewers to her Facebook, Pinterest, and Instagram accounts to purchase Infringing Photographs, as seen by the following screenshots. Martin kept these videos on her YouTube page until February 2019, when she removed them.



32.     In addition to directly purchasing Infringing Products from Martin through the mechanisms of the websites on which she is displaying and advertising Infringing Products for

sale, Distributors and other consumers can also purchase Infringing Products from Martin by contacting her through the websites and arranging purchases through other means.

33.     Martin is not informing customers on any website that SeneGence strictly prohibits Distributors from using the Infringing Photographs that Martin is selling as promotional, marketing, or advertising materials, or that SeneGence does not approve, and has never approved, of her use of the SeneGence Registered Trademarks or Trade Dress in the Infringing Photographs.

34.     To the contrary, and as partially shown in the screenshots inserted in subparagraphs 26(a)-(k), Martin has led consumers to falsely believe that she is an active Distributor and/or that the Infringing Photographs originated from or are sponsored by, authorized by, approved by, or otherwise connected with SeneGence.

35.     In September 2018, SeneGence sent Martin a cease and desist letter demanding that she stop creating, advertising, and selling promotional materials to Distributors that feature the SeneGence Registered Trademarks. The letter notified Martin that Distributors are prohibited from using promotional materials not approved by SeneGence and explained that her creation, advertisement, and sale of the Infringing Photographs are likely to cause confusion, cause mistake, or deceive Distributors and their customers because the materials falsely suggest that SeneGence has approved of them and permit Distributors to use the materials to advertise and sell SeneGence products.

36.     After she received the cease-and-desist letter, Martin removed some of the Infringing Photographs from her Patreon and/or Pixieset accounts that clearly displayed the SeneGence Registered Trademarks.  However, Martin did not remove—and continued to display and offer for sale—many other Infringing Photographs through her accounts on Patreon, Pixieset, Facebook, Pinterest, and Instagram that display the SeneGence Registered Trademarks, the "S" trademark, and the SeneGence Trade Dress, as can be seen in the following screenshots:





37.     In some instances, Martin posted to her websites photographs of SeneGence products that had been twisted so that no SeneGence Registered Trademarks could be seen.  As can be seen in the following screenshot, however, the name of the product shade or color has always remained visible even when Martin has obscured the SeneGence Registered Trademarks that appear on the products:



38.     Nearly all of the Infringing Photographs that Martin displayed or is currently displaying on Patreon and/or Pixieset are labeled with the SeneGence shade or color name associated with the product she photographed, as can be seen in the following screenshots:







39.     As can be seen in the following screenshots, the SeneGence Trade Dress—and in particular the distinctive gold strip at the end of the label on SeneGence products—is also visible in many of the Infringing Photographs that Martin has displayed or is currently displaying on Patreon and/or Pixieset:



40.     Martin also continued to advertise on Patreon and/or Pixieset how the Infringing Photographs can be used to market SeneGence products.  For example, and as can be seen in the following screenshot, Martin has continued to produce and encourage consumers to purchase printable images of swatches she has created that are intended to help consumers compare different colors of SeneGence lip products:





41.    Martin also continued to advertise Infringing Products for sale and use the SeneGence Registered Trademarks, the "S" trademark, and the SeneGence Trade Dress on Facebook, Pinterest, and Instagram, as can be seen the following screenshots:

















42.     Many of the Infringing Photographs that appeared on Martin's Facebook, Pinterest, and Instagram accounts were nearly identical to photographs that appeared on her Patreon and/or Pixieset accounts, except that the SeneGence Registered Trademarks had been removed from the photographs on Patreon and/or Pixieset while they were not removed from the photographs on the other websites.

43.     Accordingly, despite Martin's receipt of and partial response to SeneGence's September 2018 cease-and-desist letter, Martin continued to offer Infringing Photographs for sale and use the SeneGence Registered Trademarks, the "S" trademark, and the SeneGence Trade Dress on Patreon, Pixieset, Facebook, Pinterest, and Instagram.  Upon information and belief, Martin is also offering Infringing Photographs for sale through other channels, including to Distributors who purchased marketing photographs for SeneGence products in the past and continue to purchase them in the present.

44.     Martin also continued to display her SeneGence Distributor number on Pinterest even though she was no longer a Distributor and was not authorized to sell SeneGence products:

45.     Additionally, on her public "Love Your Lips with Siara" Facebook group, Martin directed SeneGence Distributors to join a separate Facebook group called "Siara's Pics" for access to her content. Martin posted in January 2018 that she had "decided to make Siara's Pics the official and ONLY Distributor group/hub I have, and make Love Your Lips with Siara a purely customer based group . . . . This means that everyone I know will still have access to the original LYLWS . . . . I am still keeping LYLWS PUBLIC and all content is still available for anyone to see (even live videos!) and share if they feel like it. Siara's Pics will now become the main port for Distributors so I can know who I am talking to and how I can help them best. I plan on sharing key content from LYLWS to Siara's Pics so no one misses out (including live videos). . . . So I ask, if you are a Distributor please leave Love Your Lips with Siara and join Siara's Pics. . . . My hope is to be left with the many (or few) who are truly invested in following what I have to offer." She then posted links to both the "customer group" and the "distributor group." This post remained visible on the Love Your Lips with Siara group, as seen in the following screenshots:

1





46.     Although Martin is no longer a SeneGence Distributor, Distributors continue to visit her "Siara's Pics" Facebook group. As of the time of filing, Martin's "Siara's Pics" Facebook group has accumulated approximately 449 new members in the last thirty days. There also have been approximately forty-two new posts made on the group in the last thirty days. The group has approximately 62,521 members.

47.     Martin also stated in her descriptions of many YouTube videos she posted that she was a current Distributor.  For example, in the description for one of her YouTube videos, Martin wrote: "Join my team and I'll teach you mu [sic] successes!  It's only $55 to join.  Go to senegence.com and click 'Become a distributor,' enter my ID 215885 when prompted and leave the fictitious business name area blank. Email me at siarammartin.gmail for more info."



48.     In February 2019, SeneGence sent Martin a second cease-and-desist letter, along with a draft complaint, again demanding that she stop creating, advertising, and selling promotional materials to Distributors that feature the SeneGence Registered Trademarks. SeneGence notified Martin that Distributors are prohibited from using promotional materials not approved by SeneGence and explained that her creation, advertisement, and sale of the Infringing Photographs are likely to cause confusion, cause mistake, or deceive Distributors and their

customers because the materials falsely suggest that SeneGence has approved of them and permit Distributors to use the materials to advertise and sell SeneGence products. The letter also informed her that her initial removal of only some of the Infringing Photographs was insufficient to resolve the matter.

49.     In response this this second letter, Martin removed some Infringing Photographs from her Pixieset, YouTube, and Pinterest websites, and deactivated her "Love Your Lips with Siara" Facebook page. She also removed the statement on Pinterest that she is a Distributor.

50.     However, Martin did not remove all Infringing Photographs from her Instagram account, "Siara's Pics" Facebook page, and Patreon website. As of the time of filing, Martin continues to display Infringing Photographs on Instagram, including but not limited to the photos in the following screenshots:



1



2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

51.     As of the time of filing, Martin continues to display Infringing Photographs on her "Siara's Pics" Facebook page, including but not limited to the photos in the following screenshots:





52.     In fact, after Martin removed her videos from YouTube, a user on the "Siara's Pics" Facebook page asked if Martin had removed the videos and if they would be available on Patreon, as seen in the following screenshot:



53.     As of the time of filing, Martin continues to display Infringing Photographs on Patreon, including but not limited to the photos in the following screenshots:












COMPLAINT - 42

54.     Martin also displays a video on Patreon using a SeneGence product and showing the SeneGence Registered Trademarks and the SeneGence Trade Dress.

55.     Additionally, Martin continues to offer the Infringing Photos for sale on her Patreon page, stating that she is "here to offer those images for those who may be interested."

56.     Upon information and belief, Martin is also continuing to display and offer Infringing Photographs for sale through other channels.

57.     These representations and the continued display of Infringing Photographs are obviously likely to lead consumers to falsely believe that Martin is an active Distributor and that the Infringing Photographs she is displaying and offering for sale originated from or are sponsored by, authorized by, approved by, or otherwise connected with SeneGence.

58.     Upon information and belief, Martin has sold and is selling Infringing Photographs depicting and bearing the SeneGence Registered Trademarks, the "S" trademark, and the SeneGence Trade Dress to consumers within California.

**SeneGence Has Suffered Significant Harm**

59.     As a proximate result of Martin's actions, SeneGence has suffered—and will continue to suffer—harm to its reputation, goodwill, the SeneGence Registered Trademarks, and its ability to control the quality of its brand and marketing materials.

60.     Martin's conduct was knowing, intentional, willful, malicious, wanton, and contrary to law.

61.     SeneGence is entitled to injunctive relief because Martin will otherwise continue to unlawfully sell Infringing Photographs, thus compromising SeneGence's ability to control the marketing materials Distributors use and the images of SeneGence products that consumers view when making purchasing decisions. Martin's ongoing illegal conduct has caused and will continue to cause irreparable harm to SeneGence's reputation, goodwill, and ability to control the advertising, marketing, and promotion of its brands.

62.     Martin's removal of some of the Infringing Photographs does not alleviate the harm SeneGence has suffered because her past and present advertising and sale of Infringing Photographs has caused and will continue to cause SeneGence irreparable harm.

### FIRST CAUSE OF ACTION
### Trademark Infringement – 15 U.S.C. §§ 1114 and 1125(a)(1)

63.     SeneGence hereby incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

64.     SeneGence is the owner of the SeneGence Registered Trademarks.

65.     The SeneGence Registered Trademarks are registered with the United States Patent and Trademark Office.

66.     The SeneGence Registered Trademarks are valid and subsisting trademarks in full force and effect.

67.     Through her advertisement and sale of photographs and other materials depicting and bearing the SeneGence Registered Trademarks, the "S" trademark, and the SeneGence Trade Dress, as well as her use of the SeneGence Registered Trademarks and the "S" trademark on the websites where she offers her materials for sale without SeneGence's consent, Martin is willfully and knowingly using in commerce the SeneGence Registered Trademarks and the "S" trademark.

68.     Martin's use of the SeneGence Registered Trademarks and the "S" trademark is likely to cause consumer confusion, cause mistake, or deceive consumers because it falsely suggests that her materials originated from, or are sponsored by, authorized by, approved by, or otherwise connected with SeneGence.

69.     Martin's use of the SeneGence Registered Trademarks and the "S" trademark is likely to cause consumer confusion, cause mistake, or deceive consumers because Distributors and ultimate consumers of SeneGence products are likely to believe that SeneGence has approved Martin's photographs as marketing materials and that the photographs are accurate depictions of SeneGence products.

70.     Martin's sales of Infringing Photographs have infringed on the SeneGence Registered Trademarks, materially damaged the value of the trademarks, and caused significant damage to SeneGence's sales, business relations, and ability to control the advertising, marketing, and promotion of its brands.

71.     As a proximate result of Martin's actions, SeneGence has suffered—and will continue to suffer—great damage, to, among other things, its business, goodwill, reputation, and profits in an amount to be proven at trial.

72.     SeneGence is entitled to recover its damages caused by Martin's infringement of the SeneGence Registered Trademarks and the disgorgement of her profits from her willfully infringing sales and unjust enrichment.

73.     Pursuant to 15 U.S.C. § 1116, SeneGence is entitled to injunctive relief enjoining Martin's infringing conduct.

74.     Pursuant to 15 U.S.C. § 1117(a), SeneGence is entitled to enhanced damages and an award of attorneys' fees.

## SECOND CAUSE OF ACTION
### Trade Dress Infringement – 15 U.S.C. § 1125(a)

75.     SeneGence hereby incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

76.     Through her advertisement and sale of photographs and other materials depicting and bearing the SeneGence Registered Trademarks and the SeneGence Trade Dress, as well as her use of the SeneGence Registered Trademarks and the SeneGence Trade Dress on the websites where she offers her materials for sale, Martin is willfully and knowingly using in commerce the SeneGence Trade Dress.

77.     Nearly all of the SeneGence products feature the same design or trade dress, including LipSense, ShadowSense, EyeSense, LashExtend, BrowSense, BlushSense, MakeSense, SeneDerm, and Fooops! products.

78.     The following screenshots, taken from the SeneGence website, are examples of SeneGence's consistent trade dress:





79.     The SeneGence Trade Dress is nonfunctional because it yields no utilitarian advantage, because alternative designs for the products are available, and because advertising of the products does not tout any utilitarian advantages of the trade dress. The same trade dress appears on nearly all tubes of SeneGence LipSense, ShadowSense, LashExtend, BlushSense, and other products as an effort to market the products as a cohesive team, to distinguish the products

from those of competitors, and to ensure that consumers immediately associate the products with SeneGence when they see all or a portion of the SeneGence Trade Dress. The design elements of SeneGence products do not affect the cost or quality of the product and are not essential to the use or purpose of the products.

80.     As a result of the widespread sale and use of SeneGence products, the public has come to recognize and identify tubes of makeup bearing the SeneGence Trade Dress, which includes the SeneGence label with gold borders and the SeneGence Registered Trademarks in distinctive thin, scripted font.

81.     In creating, advertising, and selling her Infringing Photographs, Martin has misappropriated key elements of SeneGence's Trade Dress—the brightly colored background of the label, the larger thin, scripted font displaying the name of the product, the smaller thin, scripted font displaying the SENEGENCE registered trademark and other identifying information, and the thick gold strip on at least one end of the label.

82.     These copied elements comprise the overall "look and feel" of SeneGence product packaging and trade dress, which is distinctive and nonfunctional.

83.     Martin's use of the SeneGence Trade Dress is without SeneGence's consent and is likely to cause consumer confusion, cause mistake, or deceive consumers because the display of SeneGence products and the SeneGence Trade Dress in the Infringing Photographs falsely suggests that the Infringing Photographs originated from or are sponsored by, authorized by, approved by, or otherwise connected with SeneGence.

84.     Martin's sales of Infringing Photographs featuring the SeneGence Trade Dress have infringed on the SeneGence Trade Dress, materially damaged the value of the SeneGence Trade Dress, and caused significant damage to SeneGence's sales, business relations, and ability to control the advertising, marketing, and promotion of its brands.

85.     As a proximate result of Martin's actions, SeneGence has suffered—and will continue to suffer—great damage to, among other things, its business, goodwill, reputation, and profits in an amount to be proven at trial.

86.     SeneGence is entitled to recover its damages caused by Martin's infringement of the SeneGence Trade Dress and the disgorgement of Martin's profits from her willfully infringing sales and unjust enrichment.

87.     Unless enjoined from advertising and selling the Infringing Photographs displaying the SeneGence Trade Dress, Martin's actions will continue to cause substantial injury to SeneGence.

88.     Pursuant to 15 U.S.C. § 1116, SeneGence is entitled to injunctive relief enjoining Martin's infringing conduct.

89.     Pursuant to 15 U.S.C. § 1117(a), SeneGence is entitled to enhanced damages and an award of attorneys' fees because this case involves calculated and willful misconduct by Martin.

### THIRD CAUSE OF ACTION
### False Advertising – 15 U.S.C. § 1125(a)(1)(B)

90.     SeneGence hereby incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

91.     SeneGence is the owner of the SeneGence Registered Trademarks.

92.     SeneGence has registered the SeneGence Registered Trademarks with the United States Patent and Trademark Office.

93.     The SeneGence Registered Trademarks are valid and subsisting trademarks in full force and effect.

94.     The SeneGence Trade Dress has acquired secondary meaning because, as a result of the widespread sale and use of SeneGence products, the public has come to recognize and identify tubes of makeup bearing the SeneGence Trade Dress.

95.     In her accounts, posts, and listings on Patreon, Pixieset, Facebook, Pinterest, and Instagram, and in connection with her advertising and sales of Infringing Photographs, Martin has willfully and knowingly used the SeneGence Registered Trademarks, the "S" trademark, and the SeneGence Trade Dress in commerce in connection with the sale and advertising of photos displaying and featuring the SeneGence Registered Trademarks, the "S" trademark, and the SeneGence Trade Dress without the consent of SeneGence.

96.     Martin's use of the SeneGence Registered Trademarks, the "S" trademark, and the SeneGence Trade Dress in connection with the advertising and sale of Infringing Photographs is likely to cause consumer confusion, cause mistake, or deceive consumers because it suggests that the photographs offered for sale by Martin are genuine and authentic marketing photographs that originate from or are sponsored by, authorized by, approved by, or otherwise connected with SeneGence when they are not.

97.     Martin's unauthorized and deceptive use of the SeneGence Registered Trademarks, the "S" trademark, and the SeneGence Trade Dress in her online accounts, posts, and listings is material and is likely to influence Distributors to purchase Infringing Photographs, as Distributors are likely to erroneously believe that SeneGence will permit them to use the Infringing Photographs as promotional, marketing, or advertising materials for their sale of SeneGence products to consumers.  In reality, however, SeneGence strictly prohibits Distributors from using unapproved promotional, marketing, or advertising materials—including the Infringing Photographs created by Martin—to sell SeneGence products.

98.     Martin's display of her inactive SeneGence Distributor number on Pinterest and YouTube is also likely to cause consumer confusion, cause mistake, or deceive consumers because the use of the number is likely to lead Distributors and other consumers to believe that Martin is authorized to sell and market SeneGence products when she is not.

99.     As a proximate result of Martin's actions, SeneGence has suffered, and will continue to suffer, great damage, including to its business, goodwill, reputation, and profits in an amount to be proven at trial.

100.    Pursuant to 15 U.S.C. § 1116, SeneGence is entitled to injunctive relief enjoining Martin's infringing conduct.

101.    Pursuant to 15 U.S.C. § 1117(a), SeneGence is entitled to enhanced damages and an award of attorneys' fees.

## FOURTH CAUSE OF ACTION
### Unfair Competition – 15 U.S.C. § 1125(a)(1)(A)

102.    SeneGence hereby incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

103.    SeneGence is the owner of the SeneGence Registered Trademarks.

104.    The SeneGence Registered Trademarks are registered with the United States Patent and Trademark Office.

105.    The SeneGence Registered Trademarks are valid and subsisting trademarks in full force and effect.

106.    The SeneGence Trade Dress has acquired secondary meaning because, as a result of the widespread sale and use of SeneGence products, the public has come to recognize and identify tubes of makeup bearing the SeneGence Trade Dress.

107.    In connection with her advertisement and sale of photographs of products bearing the SeneGence Registered Trademarks, the "S" trademark, and the SeneGence Trade Dress, as well as her use of the SeneGence Registered Trademarks and the "S" trademark on the websites where she offers her photographs for sale, Martin has willfully and knowingly used in commerce words and terms that are likely to cause consumer confusion, cause mistake, or deceive an appreciable number of ordinarily prudent purchasers as to the affiliation, connection, association, sponsorship, or approval of her photographs because her words and terms falsely suggest that the photographs she offers for sale originate from or are sponsored by, authorized by, approved by, or otherwise connected with SeneGence.

108.    Martin's display of her inactive SeneGence Distributor number on Pinterest and YouTube is also likely to cause consumer confusion, cause mistake, or deceive consumers because the use of the number is likely to lead Distributors and other consumers to believe that Martin is authorized to sell and market SeneGence products when she is not.

109.    Martin's advertisement and sales of Infringing Photographs have materially damaged the value of the SeneGence Registered Trademarks and caused significant damage to

SeneGence's sales, business relations, and ability to control the advertising, marketing, and promotion of its brands.

110.    As a proximate result of Martin's actions, SeneGence has suffered—and will continue to suffer—great damage to, among other things, its business, goodwill, reputation, and profits in an amount to be proven at trial.

111.    Pursuant to 15 U.S.C. § 1116, SeneGence is entitled to injunctive relief enjoining Martin's infringing conduct.

112.    Pursuant to 15 U.S.C. § 1117(a), SeneGence is entitled to enhanced damages and an award of attorneys' fees.

### FIFTH CAUSE OF ACTION
### Common Law Trademark Infringement

113.    SeneGence hereby incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

114.    This claim arises under the laws of the State of California.

115.    SeneGence is the owner of the SeneGence Registered Trademarks, which are distinctive and widely recognized marks by the consuming public.

116.    The SeneGence Registered Trademarks are registered with the United States Patent and Trademark Office.

117.    The SeneGence Registered Trademarks are valid and subsisting trademarks in full force and effect.

118.    SeneGence is widely recognized as the designated source of goods bearing the SeneGence Registered Trademarks.

119.    SeneGence is also widely recognized as the designated source of goods bearing the "S" trademark.

120.    The stylized "S" trademark has acquired secondary meaning because, as a result of the widespread sale and use of SeneGence products, the public has come to recognize and identify SeneGence products bearing the unique, stylized "S" mark, which includes the silhouette of a

woman in profile and the depiction of a flower drawn into the shape of the letter "S" to look like the profile of a woman's face.

121.    Through her advertisement and sale of photographs and other materials depicting and bearing the SeneGence Registered Trademarks, the "S" trademark, and the SeneGence Trade Dress, as well as her use of the SeneGence Registered Trademarks and the "S" trademark on the websites where she offers her materials for sale, Martin is willfully and knowingly using in commerce the SeneGence Registered Trademarks without SeneGence's consent.

122.    Martin's use of the SeneGence Registered Trademarks and the "S" trademark is likely to cause consumer confusion, cause mistake, or deceive consumers because Distributors and ultimate consumers of SeneGence products are likely to believe that SeneGence has approved Martin's photographs as marketing materials and that the photographs are accurate depictions of SeneGence products.

123.    Martin's sales of Infringing Photographs have infringed on the SeneGence Registered Trademarks, materially damaged the value of the trademarks, and caused significant damage to SeneGence's sales, business relations, and ability to control the advertising, marketing, and promotion of its brands.

124.    As a proximate result of Martin's actions, SeneGence has suffered—and will continue to suffer—great damage to, among other things, its business, goodwill, reputation, and profits in an amount to be proven at trial.

125.    SeneGence is entitled to recover its damages caused by Martin's infringement of the SeneGence Registered Trademarks and to disgorge her profits from her willfully infringing sales and unjust enrichment.

## SIXTH CAUSE OF ACTION
### Tortious Interference With Contracts

126.    SeneGence hereby incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

127.    This claim arises under the laws of the State of California.

128.    SeneGence has contracts with all of its Distributors, who sell SeneGence products.

Only Distributors are authorized to sell SeneGence products.

129.     SeneGence's contracts—the Distributor Agreements—with its Distributors prohibit Distributors from, among other things, using promotional, marketing, or advertising materials that have not been approved by SeneGence in connection with the sale of SeneGence products.  Distributors are also prohibited from obtaining promotional materials featuring copyrighted or trademarked material from any source other than SeneGence unless SeneGence gives prior written approval.

130.     Martin had knowledge of SeneGence's contracts with Distributors and of these prohibitions.  Martin had knowledge of these things, among other reasons, because Martin was herself a Distributor until June 2018.  SeneGence also sent Martin a cease and desist letter in September 2018 demanding that she stop creating, advertising, and selling Infringing Photographs to Distributors because Distributors are prohibited from using promotional materials not approved by SeneGence and SeneGence does not approve of the materials created by Martin.  SeneGence's letter explained that, by advertising and selling the Infringing Photographs to Distributors, Martin is inducing Distributors to breach their contracts with SeneGence.

131.     Despite this warning, Martin has continued to intentionally interfere with the contracts between SeneGence and its Distributors by continuing to advertise and sell the Infringing Photographs to Distributors and encouraging Distributors to use them as marketing materials to advertise and sell SeneGence products.

132.     By encouraging and providing the means for Distributors to use promotional, marketing, or advertising materials that have been expressly prohibited by SeneGence, Martin has solicited and directly caused the breach of SeneGence's contracts with its Distributors.

133.     Martin has no legal right, privilege or justification for her conduct.

134.     As a proximate result of Martin's actions, SeneGence has suffered, and will continue to suffer, damage to its sales, business relations, and ability to control the advertising, marketing, and promotion of its brands.

135.     Martin's acts have been willful, malicious, oppressive, and undertaken with the conscious intent to deprive SeneGence of its rights and property, thereby entitling SeneGence to

exemplary damages in addition to all other damages sustained thereby.

## SEVENTH CAUSE OF ACTION
### False Advertising in Violation of Business & Professions Code § 17500, *et seq.*

136.    SeneGence hereby incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

137.    This claim arises under the laws of the State of California.

138.    SeneGence is the owner of the SeneGence Registered Trademarks.

139.    The SeneGence Registered Trademarks are registered with the United States Patent and Trademark Office.

140.    The SeneGence Registered Trademarks are valid and subsisting trademarks in full force and effect.

141.    In her accounts, posts, and listings on Patreon, Pixieset, Facebook, Pinterest, and Instagram, and in connection with her advertising and sales of Infringing Photographs, Martin has willfully and knowingly used the SeneGence Registered Trademarks, the "S" trademark, and the SeneGence Trade Dress in commerce in connection with the sale and advertising of photos displaying and featuring the SeneGence Registered Trademarks, the "S" trademark, and the SeneGence Trade Dress without the consent of SeneGence.

142.    Martin's use of the SeneGence Registered Trademarks, the "S" trademark, and the SeneGence Trade Dress in connection with the advertising and sale of Infringing Photographs is likely to cause consumer confusion, cause mistake, or deceive consumers because it suggests that the photographs offered for sale by Martin are genuine and authentic marketing photographs that originate from or are sponsored by, authorized by, approved by, or otherwise connected with SeneGence when they are not.

143.    Martin's unauthorized and deceptive use of the SeneGence Registered Trademarks, the "S" trademark, and the SeneGence Trade Dress in her online accounts, posts, and listings is material and is likely to influence Distributors to purchase Infringing Photographs, as Distributors are likely to erroneously believe that SeneGence will permit them to use the Infringing Photographs as promotional, marketing, or advertising materials for their sale of SeneGence

products to consumers.  In reality, however, SeneGence strictly prohibits Distributors from using unapproved promotional, marketing, or advertising materials—including the Infringing Photographs created by Martin—to sell SeneGence products.

144.   Martin's display of her inactive SeneGence Distributor number on Pinterest and YouTube is also likely to cause consumer confusion, cause mistake, or deceive consumers because the use of the number is likely to lead Distributors and other consumers to believe that Martin is authorized to sell and market SeneGence products when she is not.

145.   Martin's advertisements and promotions of her Infringing Photographs and other materials have been disseminated to the public of California.

146.   Martin knew or should have known that her use of the SeneGence Registered Trademarks, the "S" trademark, and the SeneGence Trade Dress was likely to mislead and deceive members of the California public.

147.   Martin's actions constitute false advertising in violation of Cal. Bus. & Prof. Code §17500, *et seq.*

148.   As a proximate result of Martin's actions, SeneGence has suffered—and will continue to suffer—great damage to, among other things, its business, goodwill, reputation, and profits in an amount to be proven at trial.

149.   SeneGence is entitled to injunctive relief under Cal. Bus. & Prof. Code § 17535 because it has no adequate remedy at law for Martin's infringement and will suffer irreparable harm unless Martin is permanently enjoined.

150.   SeneGence is entitled to restitution under Cal. Bus. & Prof. Code § 17535.

151.   SeneGence is entitled to recover cumulative civil penalties under Cal. Bus. & Prof. Code §§ 17536 and 17534.5.

## EIGHTH CAUSE OF ACTION
### Unfair Competition in Violation of Business & Professions Code § 17200, *et seq.*,

152.   SeneGence hereby incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

153.   This claim arises under the laws of the State of California.

154.    Martin did the things herein alleged as a business practice.

155.    In doing the things herein alleged, Martin engaged in unlawful conduct, as alleged in the causes of action above.

156.    In doing the things herein alleged, Martin engaged in unfair conduct, which was unethical and substantially injurious to consumers.

157.    In doing the things herein alleged, Martin engaged in fraudulent conduct.

158.    In doing the things herein alleged, Martin engaged in unfair, deceptive, untrue, or misleading advertising.

159.    As a result of Martin's actions alleged hereinabove, SeneGence has suffered—and will continue to suffer—great damage to, among other things, its business, goodwill, reputation, and profits in an amount to be proven at trial.

160.    SeneGence is entitled to injunctive relief under Cal. Bus. & Prof. Code § 17203 because it has no adequate remedy at law for Martin's wrongful conduct and will suffer irreparable harm unless Martin is permanently enjoined.

161.    SeneGence is entitled to recover civil penalties under Cal. Bus. & Prof. Code § 17206.

162.    Martin's wrongful conduct, as alleged herein, was a substantial factor in, and did proximately cause, damage to SeneGence.

163.    SeneGence is entitled to restitution under Cal. Bus. & Prof. Code §§ 17203, 17535; *Clark v. Superior Court*, 50 Cal. 4th 605, 613 (2010) (restitution available as monetary remedy on § 17200 claim).

## PRAYER FOR RELIEF

WHEREFORE, SeneGence prays for relief and judgment as follows:

A.    Judgment in favor of SeneGence and against Martin in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, its reasonable attorneys' fees, and restitution, including disgorgement of profits, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

B.      That a permanent injunction be issued enjoining Martin and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Martin, and all of those in active concert and participation with Martin (the "Enjoined Parties") as follows:

   i)      Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all photographs of SeneGence products, all photographs displaying any of the SeneGence Registered Trademarks or other trademarks SeneGence owns, and all photos displaying the SeneGence Trade Dress,

   ii)     Prohibiting the Enjoined Parties from using any of the SeneGence Registered Trademarks and the "S" trademark in any manner, including advertising on the Internet,

   iii)    Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of SeneGence's products, or any of the SeneGence Registered Trademarks or the SeneGence Trade Dress, and

   iv)     Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo!, and Bing), to remove from the Internet all Infringing Photographs and content which suggests that SeneGence Distributors are authorized to use the Infringing Photographs as marketing materials in connection with the advertisement and sale of SeneGence products, including removing such content from the websites www.patreon.com, www.pixieset.com, www.facebook.com, www.pinterest.com, www.instagram.com, and www.youtube.com;

C.      An award of attorneys' fees, costs, and expenses; and

D.      Such other and further relief as the Court deems just, equitable and proper.

### JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, SeneGence demands trial by jury of all issues so triable.

Dated: March 19, 2019                    Respectfully submitted,

                                         */s/ Morgan E. Pietz*

                                         PIETZ & SHAHRIARI, LLP

Morgan E. Pietz
Cyrus E. Shahriari