HUGHLEY SMITH LAW
Tyra Hughley Smith, SBN 259845
11271 Ventura Blvd., #226
Studio City, California 91604
Telephone:   (818) 527-2225
Email:         tyra@hughleysmithlaw.com

CAMUTI LAW GROUP APC
Nathan B. Camuti, CA Bar No. 300568
33 Brookline
Aliso Viejo, California 92656
Telephone:   (949) 275-7852
Facsimile:   (949) 215-9598
Email:         nate@camutilaw.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

| | |
|---|---|
| SGII, INC., d/b/a SENEGENCE INTERNATIONAL, INC., a Delaware Corporation<br><br>Plaintiff,<br><br>v.<br><br>SIARA MARTIN, an individual, and SIARA MARTIN, LLC, a Utah limited liability company,<br><br>Defendants. | Case No: 8:19-cv-00541-JVS-KES<br><br>**DEFENDANTS SIARA MARTIN AND SIARA MARTIN, LCC'S FIRST AMENDED COUNTERCLAIMS FOR:**<br>**1. DECLARATORY JUDGEMENT OF NONINFRINGEMENT**<br>**2. DECLARATORY JUDGEMENT OF INVALIDITY**<br>**3. COPYRIGHT INFRINGEMENT**<br>**4. MISAPPROPRIATION OF RIGHTS OF PUBLICITY**<br>**5. UNJUST ENRICHMENT**<br>**6. TORTIOUS INTERFERENCE WITH CONTRACTS**<br>**7. UNFAIR COMPETITION [Cal. Bus. & Prof. Code §§ 17200, et seq.];**<br><br>**DEMAND FOR JURY TRIAL** |
| SIARA MARTIN, an individual, and SIARA MARTIN, LLC, a Utah limited liability company;<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>SGII, INC., d/b/a SENEGENCE INTERNATIONAL, INC., a Delaware Corporation, Joni Rogers- | |

Kante, an individual, and Does 1-100;

Counterclaim
Defendants.

## COUNTERCLAIMS

For their counterclaims against counterclaim defendant SGII, INC., d/b/a SENEGENCE INTERNATIONAL, INC., and Joni Rogers-Kante, an individual, counterclaim plaintiffs SIARA MARTIN and SIARA MARTIN, LLC allege as follows:

## JURISDICTION

1.      This court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because it involves claims arising under the Lanham Act and 17 U.S.C. § 101 et seq.

2.      The court has supplemental jurisdiction over Counterclaim Plaintiff's state law claim under 28 U.S.C. § 1367.

## PARTIES

3.      Counterclaim plaintiff SIARA MARTIN (MARTIN) is an individual residing in Tooele, UT.

4.      Counterclaim plaintiff SIARA MARTIN, LLC (MARTIN LLC) is a corporation organized and existing under the laws of the state of Utah, having an office and principal place of business at 1049 Ironwood Road, Erda, Utah, 84074.

5.      Counterclaim defendant SGII, INC., d/b/a SENEGENCE INTERNATIONAL, INC. (Counterclaim Defendant) is a Delaware Corporation organized and existing under the laws of the state of California, having a principal place of business located at 19651 Alter, Foothill Ranch, CA 92610.

6.      Counterclaim defendant Joni Rogers-Kante is an individual with a residence at 76 Golden Eagle in Irvine, CA.

///

2

## **FACTUAL ALLEGATIONS**

1.     On information and belief, Counterclaim Defendant SGII, Inc. incorporated as SGII, Inc., in the State of Delaware on or about December 5, 1997.

2.     Counterclaim Defendant SGII, Inc. registered SGII, Inc., as a foreign corporation in the State of California on or about September 7, 1999.

3.     Counterclaim Defendant SGII, Inc.' most recent Statement of Information was filed with the California Secretary of State on or about June 3, 2019, listing Joni Rogers-Kante as CEO, Bennie Kante as Secretary, and Jerome Kaiser as Chief Financial Officer.  The Statement of information reports the type of business of the corporation is Direct Sales – Cosmetics.

4.     On information and belief, on or about January 6, 2017, Joni Rogers-Kante, Bennie Kante, and Jerome Kaiser incorporated SGII DC, Inc., in the State of Delaware.

5.     On or about March 20, 2017, SGII DC, Inc., was registered as a foreign corporation in California.

6.     The most recent Statement of Information filed with the California Secretary of State lists Joni Rogers-Kante as CEO, Bennie Kante as Secretary, and Jerome Kaiser as Chief Financial Officer and reports the type of business of the corporation is to Facilitate the Distribution of Cos[metics].

7.     On information and belief, on or about March 2, 2017, Joni Rogers-Kante, Bennie Kante, and Jerome Kaiser formed Senegence Manufacturing, LLC, in the State of Delaware.

8.     On information and belief, Counterclaim Defendant SGII, Inc. sell SeneGence products.

9.     On information and belief, CD do not manufacture any of the goods sold under the SeneGence brand.

10.     On information and belief, SeneGence products are manufactured, imported, and distributed by Senegence Manufacturing, LLC, and SGII DC, Inc.

FIRST AMENDED COUNTERCLAIMS OF DEFENDANTS SIARA MARTIN AND SIARA MARTIN, LLC

11.     On information and belief, Senegence Manufacturing, LLC, or SGII DC, Inc., is the source of goods for the SeneGence brand.  Counterclaim Defendant SGII, Inc., merely purchases products from SGII DC, Inc., and resells them.

12.     On information and belief, Counterclaim Defendant SGII, Inc. does not lawfully use any of the registered trademarks in commerce because they are not the source of goods.

13.     On information and belief, Counterclaim Defendant Joni Rogers-Kante has a residence at 76 Golden Eagle in Irvine, California.

14.     Counterclaim Plaintiff Siara Martin became a distributor for Counterclaim Defendant from on or around September 27, 2016.

15.     Martin rose quickly within the ranks at SeneGence structure largely because of my marketing efforts and the product photography. Martin's efforts surrounding her photography allowed her to sell large amounts of product.

16.     Martin took all of the photography that she utilized as a distributor herself and owns all copyrights in those works.

17.     By on or around July 3, 2017, Martin had made enough revenue as a distributor that Martin was eligible for a car incentive (SeneCar) and reached the ManaGence upper level.

18.     While Martin was a distributor, she utilized many social media outlets to sell products including YouTube, Facebook, Instagram, and Pinterest. Distributors are allowed to use SeneGence trademarks and packaging as they wish for all photography taken while servicing as a distributor.

19.     Counterclaim Defendant SGII, Inc. realized Martin's skills and talents, as the company, several times on its official social media channels, featured Martin's work as a method to sell its own products.

20.     On numerous occasions representatives of Counterclaim Defendant SGII, Inc. touted Martin's work, and in fact requested that she teach others how to

4

hone their photography skills so that she could help other distributors increase their revenue—and in turn Counterclaim Defendant's revenue—through better photography, because she was a role model in this field.

21.   In fact, Counterclaim Defendant SGII, Inc. were so impressed by Martin's photography that in January 2018, Counterclaim Defendant SGII, Inc. requested –and Martin taught—a photography class on behalf of SeneGence for 1,200 attending distributors and even corporate SeneGence corporate executives.

22.   When Martin conducted trainings, her slides had to be approved by SeneGence corporate before she could use them for training.

23.   In November of 2017, Martin was told by Kristen Aguilar, head of marketing that she could not work in corporate for photography solely because she was a distributor.

24.   Martin continued to thrive within the company, and in April of 2018 Martin was awarded multiple awards at SeneGence Seminar, SeneGence's annual event for distributors.

25.   Counterclaim Defendant SGII, Inc. not only approved of Martin's photography; they encouraged it. Counterclaim Defendant SGII, Inc. used Martin as a guide to help other distributors. When she started her Facebook group "Siara's Pic's, several SeneGence executives, including Joni Rogers-Kante, SeneGence CEO, Leslie Boyd Brandley happily joined the group and encouraged her to share images in the group that could be used by other distributors.

26.   Counterclaim Defendant SGII, Inc., has a policy allowing distributors, who are not employees, to create and use their own images and marketing materials for use in the distributors' business selling SeneGence products.

27.   On information and belief, Counterclaim Defendant SGII, Inc., has a policy allowing distributors to distribute these marketing materials including Counterclaim Defendant SGII, Inc.'s alleged trademarks to their sub-distributors,

called their "downline."

28.     On information and belief, Counterclaim Defendant SGII, Inc., does not review or approve graphics before distributors post them on their social media channels for viewing by the public.

29.     At no time while Martin was a distributor was a compliance issue mentioned regarding her photography. In fact, SeneGence encouraged other distributors to use Martin's photography and encouraged distributors to create their own photography.  SeneGence did not and does not require approval of the images before usage. On information and belief, Counterclaim Defendant SGII, Inc. have never penalized a distributor for poor photography or for using its trademarks or products.

30.     On information and belief, Counterclaim Defendant SGII, Inc., has thousands of distributors.  Each of these thousands of distributors is not an employee and is an independent contractor having her own business to sell SeneGence Products.

31.     Every photograph that was taken while Martin was a distributor was in compliance with SeneGence.

32.      On May 21, 2018, Martin publicly announced she would no longer be a distributor.

33.     Literally one day later, on May 22, 2018, Kristen Aguilar, head of marketing for Counter Defendant, reached out to Martin to actively pursue her to work for corporate—for marketing and photography purposes—and reiterated that in order to work for Counterclaim Defendant SGII, Inc. that she would have to terminate her distributor agreement.

34.     As a result of the assurance by Aguilar and SeneGence that there would be a corporate job for Martin if Martin were not a distributor, Martin terminated her distributor agreement on June 3, 2018.

35.     At the time when Martin terminated her distributor agreement, she

also went dormant on various social media platforms, including YouTube and Pinterest. She no longer utilized those accounts in any way, including posting new content, and abandoned those accounts.

36. Aguilar herself stated, among other things that Martin was "so talented" and even said that "I see your work all the time and think, 'dang! She's amazing!'" via various emails to Martin.

37. Martin then made every effort to work with SeneGence, but was met with lengthy delays in trying to get specifics about the potential employment relationship before the employment discussions were terminated.

38. In late June of 2018, Martin began her activities as organizer of her own business. Martin then formed Siara Martin LLC on July 12, 2018.

39. Siara Martin LLC utilized an account on Patreon in order to offer subscription services to individuals who wanted to support the company by offering them access to photography. Anyone is welcome to subscribe to the Patreon account, and Siara Martin LLC nor Siara Martin monitors who is subscribing, their location, what or if subscribers are downloading images, or not.

40. On September 10, 2018, just a couple of months after Martin ceased her role as a ManaGence (high level) distributor and turned down the position in SeneGence corporate, Siara Martin received a letter from SeneGence, via its attorney Adam Sherman, which was a cease and desist letter demanding that Martin cease all use of trademarked materials.

41. Defendants complied with SeneGence's request and ensured that no registered trademarks appeared in her photography that was for sale via her Patreon account. At no time since that time has either Martin or Siara Martin LLC added any photography that includes registered trademarks of SeneGence.

42. Via counsel, Defendants advised SeneGence of their compliance

43. On October 16, 2018, SeneGence attorney Adam Sherman responded, via counsel, the following: "SeneGence appreciates the changes your client has

7

made on her websites and other related accounts to stop the infringement of SeneGence's trademarks and other IP rights. While SeneGence disagrees with the characterizations in your letter, including, without limitation, about SeneGence's actions and why Ms. Martin believes she did nothing wrong, they do not intend to take further legal action against Ms. Martin at this time."

44.     Since that time, Counterclaim Defendant SGII, Inc.have become more restrictive in their photography, in ensuring that they do not include SeneGence packaging in any photography, and continue to not use any SeneGence registered trademarks.

45.     Martin, on behalf of Siara Martin LLC, even sought to create a partnership with SeneGence regarding her photography business, but SeneGence declined.

46.     Surprisingly, in February 2019, Defendant Martin received another cease and desist letter with SeneGence taking exception to Martin's YouTube and Pinterest accounts—which clearly had been abandoned since she was a distributor in June 2018—due to the trademarks being shown and it identifying her as a distributor.

47.     Defendant Martin, who had completely forgotten about the information on the YouTube and Pinterest accounts because she no longer used them, quickly removed all content from those accounts immediately upon notification from SeneGence. Out of an abundance of caution, she also made clear in her closed Facebook group that she had no affiliation with SeneGence, as that seemed to be one of the key points they objected to in the February cease and desist.  Martin and Siara Martin LLC have made every effort to ensure compliance with SeneGence demands.

48.     It came as a surprise that SeneGence, in the midst of attempting to discuss settlement terms, filed the original complaint against Martin, as she was attempting to negotiate a reasonable settlement with them in March of 2019. In

fact, on March 18, 2019, SeneGence's counsel inquired as to the settlement terms, right at the close of business at 4:57 p.m. Pacific time. Defendant's counsel responded, two minutes later at 4:59 p.m. Pacific time, that Martin would respond in "short order." That substantive response came less than two business days later on March 20, 2019, at which time Defendant Martin was advised, via counsel, that SeneGence had already filed suit the day before, less than one business day after counsel's email at 4:57 p.m. on March 18, 2019.

49.   Since Plaintiffs have commenced their lawsuit against Defendant Martin (and subsequently amending to add Defendant Siara Martin LLC in the first amended complaint), SeneGence has continued to use Defendant Martin's photography, without a license or consent, to promote its brand, despite stating that such photography creates irreparable harm to its business.

50.   In fact, at SeneGence's annual seminar on or around April 12 or 13, 2019, SeneGence used, on its big screen no less than **nine** of Martin's original photographs in their presentations and promotions during the event, which caters to all distributors. All of these images are subject to copyright, and all of them were used **after** commencing this lawsuit stating that Martin's images were harming their brand.

51.   Prior to Plaintiff's seminar, they hired Ryan Halls, whose wife was and still remains a distributor in the Queen rank, as a photographer, which is stark contrast to their handling of Martin's employment, because if a spouse is a distributor, then, by company policy, the other spouse is considered bound to the same agreement as only one distributor per household is allowed and spouses become a team.

52.   Since just before the commencement of the present suit, SeneGence has started issuing compliance letters to distributors—a new practice that didn't occur during the two years Defendant Martin was a distributor, advising distributors that if they used Defendants' photography that they would be in

9

violations of their agreements.

53.    Throughout the course of this lawsuit, SeneGence representatives have continued to praise Martin's work.

54.    On or around April 18, 2019, in a Facebook live hosted by Aguilar and Michael Moad, chief legal officer or the equivalent for SeneGence, Counterclaim Defendant SGII, Inc. stated, clearly in reference to Martin, that "the images that we're specifically referring to are beautiful images. I'll be the first to admit that." Aguilar also stated that any usage of Defendants' photography up until that point "would be considered to be in compliance" and that the compliance notices that were being sent were "not violations," with Moad chiming in, "They were a reminder."

55.    But the usage of Defendants' photography continues, even into this month. On July 5, 6, and 7, 2019, in a training done for New Zealand and Australian distributors in an officially approved and sponsored training organized by SeneGence corporate, yet another photograph of Defendants' was used. Not only was the photograph used in training, but Kyrya Clancy, the Customer Service Manager at SeneGence International shared the presentation via Facebook Live, again distributing the photograph.

## FIRST CLAIM FOR RELIEF

### Declaratory Judgement of Non-Infringement - Registered Trademark

56.    Counterclaim Plaintiffs reallege and incorporate by reference each and every allegation contained within paragraphs 1 through 54, inclusive, as if the same were fully set forth herein.

57.    As set forth more fully in the FAC, there is an actual controversy between Counterclaim Defendant SGII, Inc. and Counterclaim Plaintiffs because Counterclaim Defendant SGII, Inc. have alleged infringement of multiple federally registered trademarks.

58.    Counterclaim Defendant SGII, Inc.'s claim for infringement under 15

10

U.S.C. § 1114 requires a showing of likelihood of confusion by the relevant consumers or potential consumers of the Defendants' images.

59.     There is no likelihood of confusion created by Defendants' use of the accused mark.  Consideration of the factors set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) leads to the conclusion that there is no likelihood of confusion.

60.     For these and other reasons, there is no likelihood of confusion created by Defendants' images.

## SECOND CLAIM FOR RELIEF

### Declaratory Judgement of Invalidity - Unregistered Trademarks

61.     Counterclaim Plaintiffs reallege and incorporate by reference each and every allegation contained within paragraphs 1 through 59, inclusive, as if the same were fully set forth herein.

62.     As set forth more fully in the FAC, there is an actual controversy between Counterclaim Defendant SGII, Inc. and Counterclaim Plaintiffs because Counterclaim Defendant has alleged infringement of a number of unregistered trademarks.

63.     Counterclaim Defendant's claims for infringement under 15 U.S.C. §§ 1114 and 1125(a), for common law trademark infringement and unfair competition, and for California Unfair Competition under California Business and Professions Code §17200 all require a valid trademark and a showing of likelihood of confusion by consumers or potential consumers of the parties' products.

64.     Counterclaim Defendant SGII, Inc.'s alleged common law trademarks are invalid and unenforceable because they are generic.

65.     In the alternative, Counterclaim Defendant SGII, Inc.'s alleged common law trademarks are invalid and unenforceable because they are merely descriptive and do not have secondary meaning.

66.     In the alternative, Counterclaim Defendant SGII, Inc.'s alleged

common law trademarks are invalid and unenforceable because they fail to function as a trademark and do not identify Counterclaim Defendant SGII, Inc. as the source of goods.

67. For these and other reasons, there is no likelihood of confusion created by Counterclaim Plaintiffs' images.

## **THIRD CLAIM FOR RELIEF**

### **Declaratory Judgement of Non-Infringement - Unregistered Trademark**

68. Counterclaim Plaintiffs reallege and incorporate by reference each and every allegation contained within paragraphs 1 through 66, inclusive, as if the same were fully set forth herein.

69. As set forth more fully in the FAC, there is an actual controversy between Counterclaim Defendant SGII, Inc. and Counterclaim Plaintiffs because Counterclaim Defendant has alleged infringement of a number of unregistered trademarks.

70. Counterclaim Defendant's claims for infringement under 15 U.S.C. §§ 1114 and 1125(a), for common law trademark infringement and unfair competition, and for California Unfair Competition under California Business and Professions Code §17200 all require a valid trademark and a showing of likelihood of confusion by consumers or potential consumers of the parties' products.

71. There is no likelihood of confusion created by Defendants' use of the accused mark, because consideration of the factors set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) leads to the conclusion that there is no likelihood of confusion.

72. Counterclaim Defendant SGII, Inc.'s alleged common law trademarks are invalid and unenforceable because they are generic, merely descriptive, fail to function as a mark, and do not identify Counterclaim Defendant SGII, Inc. as the source of goods.

73. For these and other reasons, there is no likelihood of confusion

created by Counterclaim Plaintiffs' images.

## **FOURTH CLAIM FOR RELIEF**

**Copyright Infringement Against Counterclaim Defendant Joni Rogers-Kante**

74.  Counterclaim Plaintiffs reallege and incorporate by reference each and every allegation contained within paragraphs 1 through 72, inclusive, as if the same were fully set forth herein.

75.  This action arises under the Federal Copyright Act of 1976, as amended, 17 U.S.C. § 101, *et seq.*

76.  The registrations of all photographs included in this claim have completed the registration process prior to the filing of the claim, per Supreme Court requirements.

77.  Counterclaim Plaintiffs are in the photography business and regular take photography for use in its business. In order to have access to use such images, one must be a subscriber to Counterclaim Plaintiff's Patreon account.

78.  Counterclaim Defendant Rogers-Kante is the CEO of SGII, which instituted a lawsuit against Counterclaim Plaintiffs for infringement of intellectual property. Since that lawsuit has commenced, Counterclaim Defendant Rogers-Kante has utilized several of Counterclaim Plaintiffs' original works to promote her company's products and brands, despite stating that these Images are hurting their trademarks and brand goodwill.

79.  Image 1 is named "oceansiara" and was created by Counterclaim Plaintiff Martin and published on or around October 18, 2018. The Image was registered in a group photography registration VA 2-123-361 (Exhibit B) with an effective date of October 24, 2018. Rogers-Kante posted the image publicly on her personal Facebook account on or around July 25, 2019.

1
2
3
4
5
6
7
8





9
10
11
12
13
14
15
16

17    ///
18    ///
19    ///

20
21
22
23
24
25
26
27
28

FIRST AMENDED COUNTERCLAIMS OF DEFENDANTS SIARA MARTIN AND SIARA MARTIN, LLC

80.     Image 2 is named "bellasiaraglossyblank" and was created by Counterclaim Plaintiff Martin and published on or around September 3, 2018. The Image was registered in a group photography registration VA 2-123-361 (Exhibit B) with an effective date of October 24, 2018. Rogers-Kante posted the image publicly on her personal Facebook account on or around July 5, 2019.




///

///

///

FIRST AMENDED COUNTERCLAIMS OF DEFENDANTS SIARA MARTIN AND SIARA MARTIN, LLC

81.    Image 3 is named "bombshellsiaraglossyblank" and was created by Counterclaim Plaintiff Martin and published on or around September 3, 2018. The Image was registered in a group photography registration VA 2-123-361 (Exhibit B) with an effective date of October 24, 2018. Rogers-Kante posted the image publicly on her personal Facebook account on or around July 5, 2019.

 

///

///

///

FIRST AMENDED COUNTERCLAIMS OF DEFENDANTS SIARA MARTIN AND SIARA MARTIN, LLC

82.     Image 4 is named "caramelapplesiaraglossyblank" and was created by Counterclaim Plaintiff Martin and published on or around September 3, 2018. The Image was registered in a group photography registration VA 2-123-361 (Exhibit B) with an effective date of October 24, 2018. Rogers-Kante posted the image publicly on her personal Facebook account on or around July 5, 2019.



///

///

///

FIRST AMENDED COUNTERCLAIMS OF DEFENDANTS SIARA MARTIN AND SIARA MARTIN, LLC

83.     Image 5 is named "dawnrisingsiaraglossyblank" and was created by Counterclaim Plaintiff Martin and published on or around September 3, 2018. The Image was registered in a group photography registration VA 2-123-361 (Exhibit B) with an effective date of October 24, 2018. Rogers-Kante posted the image publicly on her personal Facebook account on or around July 5, 2019.

 

///

///

///

FIRST AMENDED COUNTERCLAIMS OF DEFENDANTS SIARA MARTIN AND SIARA MARTIN, LLC

84.     Image 6 is named "luvitisiaraglossyblank" and was created by Counterclaim Plaintiff Martin and published on or around September 3, 2018. The Image was registered in a group photography registration VA 2-123-361 (Exhibit B) with an effective date of October 24, 2018. Rogers-Kante posted the image publicly on her personal Facebook account on or around July 5, 2019.

 

///

///

///

FIRST AMENDED COUNTERCLAIMS OF DEFENDANTS SIARA MARTIN AND SIARA MARTIN, LLC

85.     Image 7 is named "sheerberrysiaraglossyblank" and was created by Counterclaim Plaintiff Martin and published on or around September 3, 2018. The Image was registered in a group photography registration VA 2-123-361 (Exhibit B) with an effective date of October 24, 2018. Rogers-Kante posted the image publicly on her personal Facebook account on or around July 5, 2019.




86.     The Images are original works of authorship fixed in a tangible medium of expression from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device; they are in perspective, orientation, positioning, lighting and other details are entirely original, distinctive, and unique.  As such, the Images are subject matter protectable under the Copyright Act.

87.     Counterclaim Plaintiffs never authorized Joni Rogers-Kante to reproduce, display, or distribute the Images for any usage, especially on her social media platforms open to the public or otherwise.

FIRST AMENDED COUNTERCLAIMS OF DEFENDANTS SIARA MARTIN AND SIARA MARTIN, LLC

88.   Counterclaim Plaintiff Martin is the proprietor of the right, title, and interest in and to the copyright in the pursuant to 17 U.S.C. § 201.

89.   The Images have been duly registered with the United States Copyright Office in registrations with an effective date of October 24, 2018.

90.   Counterclaim Defendant did not have the authorization of Counterclaim Plaintiff Martin or the law to reproduce, distribute, display, or create derivative works of the Images.

91.   Counterclaim Defendant has not compensated Martin for reproducing and displaying the Images.

92.   Without Martin's authorization, Counterclaim Defendant reproduced and publicly displayed Martin's copyrightable works in violation of 17 U.S.C. § 501.

93.   Counterclaim Defendant's conduct violates the exclusive rights belonging to Martin under 17 U.S.C. § 106.

94.   All of Joni Rogers-Kante's usages of the Images have come after the company she is the CEO of initiated its lawsuit against Counterclaim Plaintiffs regarding intellectual property matters.

95.   Counterclaim Defendant Rogers-Kante was reproducing, displaying, and distributing the Images between July 5, 2019 and July 25, 2019, Martin's claims of infringement are clearly within the three-year statute of limitations period pursuant to 17 U.S.C. § 507(b).

96.   As a direct and proximate result of their wrongful conduct, Defendants have realized and continues to realize profits and other benefits rightfully belonging to Martin for the Images.  Accordingly, Martin is entitled to and seeks an award of actual damages and profits plus attorneys' fees and costs pursuant to 17 U.S.C. §§ 504(b) and 505 for all images.

97.   In the alternative, since Martin timely registered the copyrights in the twenty-one Images, Martin is entitled to and seeks statutory damages for

Defendants' infringement of the Images, including attorneys' fees and costs, pursuant to 17 U.S.C. §§ 504(c)(1) and 505.

98.    The infringement by Counterclaim Defendant SGII, Inc. was blatantly willful and performed with knowledge that the reproduction and display of the Images was unauthorized, especially given that they are in pending litigation with the creator of the works; Martin is therefore entitled to the recovery of enhanced statutory damages pursuant to 17 U.S.C. 504 (c)(2).

## FIFTH CLAIM FOR RELIEF

### Copyright Infringement Against Counterclaim Defendant SGII

99.    Counterclaim Plaintiffs reallege and incorporate by reference each and every allegation contained within paragraphs 1 through 97, inclusive, as if the same were fully set forth herein.

100.    This action arises under the Federal Copyright Act of 1976, as amended, 17 U.S.C. § 101, et seq.

101.    The registrations of all photographs included in this claim have completed the registration process prior to the filing of the claim, per Supreme Court requirements.

102.    Counterclaim Plaintiffs are in the photography business and regular take photography for use in its business. In order to have access to use such images, one must be a subscriber to Counterclaim Plaintiff's Patreon account.

103.    SeneGence has used **copious** amounts of Counterclaim Plaintiffs' original works to promote their products and brands, despite stating that these Images are hurting their trademarks and brand goodwill.

104.    Image 1 is named "idoeye1" and was created by Counterclaim Plaintiff Martin and published on or around February 11, 2019. The Image was registered in a group photography registration VA 2-155-246 (Exhibit A) with an effective date of June 19, 2019. SeneGence used the image on its massive overhead video screen at SeneGence Seminar on or around April 12 or 13, 2019,

which has since been rebroadcasted.



Image "idoeye1"



SeneGence usage of "idoeye1" at Seminar on or around April 12-13, 2019

105.    Image 2 is named "idoeye2" and was created by Counterclaim Plaintiff Martin and published on or around February 11, 2019. The Image was registered in a group photography registration VA 2-155-246 (Exhibit A) with an effective date of June 19, 2019. SeneGence used the image on its massive overhead video screen at SeneGence Seminar on or around April 12 or 13, 2019, which has since been rebroadcasted.



Image "idoeye2"

SeneGence usage of "idoeye2" at
Seminar on or around April 12-13, 2019

106.   Image 3 is named "idoeyename" and was created by Counterclaim Plaintiff Martin and published on or around February 11, 2019. The Image was registered in a group photography registration VA 2-155-246 (Exhibit A) with an effective date of June 19, 2019. SeneGence used the image on its massive overhead video screen at SeneGence Seminar on or around April 12 or 13, 2019, which has since been rebroadcasted.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

Image "idoeyename"



SeneGence usage of "idoeyename" at Seminar on or around April 12-13, 2019

23   107.   Image 4 is named "idoeyetrio" and was created by Counterclaim
24   Plaintiff Martin and published on or around February 11, 2019. The Image was
25   registered in a group photography registration VA 2-155-246 (Exhibit A) with an
26   effective date of June 19, 2019. SeneGence used the image on its massive
27   overhead video screen at SeneGence Seminar on or around April 12 or 13, 2019,
28   which has since been rebroadcasted.

FIRST AMENDED COUNTERCLAIMS OF DEFENDANTS SIARA MARTIN AND SIARA MARTIN, LLC



Image "idoeyetrio"

SeneGence usage of "idoeyename" at Seminar on or around April 12-13, 2019

108.   Image 5 is named "rosie 1" and was created by Counterclaim Plaintiff Martin and published on or around April 1, 2019. The Image was registered in a group photography registration VA 2-155-246 (Exhibit A) with an effective date of June 19, 2019, within the three-month time period for timely registration and eligible for statutory damages. SeneGence used the image on its massive overhead video screen at SeneGence Seminar on or around April 12 or 13, 2019, which has

1  since been rebroadcasted.

2

3                                                      Image "rosie 1"





SeneGence usage of "rosie 1" at

Seminar on or around April 12-13, 2019

109.   Image 6 is named "rosie eye 1" and was created by Counterclaim Plaintiff Martin and published on or around April 1, 2019. The Image was registered in a group photography registration VA 2-155-246 (Exhibit A) with an effective date of June 19, 2019, within the three-month time period for timely registration and eligible for statutory damages. SeneGence used the image on its massive overhead video screen at SeneGence Seminar on or around April 12 or 13,

2019, which has since been rebroadcasted.



Image "rosie eye 1"

SeneGence usage of "rosie eye 1" at
Seminar on or around April 12-13, 2019

110.    Image 7 is named "rosie eye 2" and was created by Counterclaim Plaintiff Martin and published on or around April 1, 2019. The Image was registered in a group photography registration VA 2-155-246 (Exhibit A) with an effective date of June 19, 2019, within the three-month time period for timely registration and eligible for statutory damages. SeneGence used the image on its massive overhead video screen at SeneGence Seminar on or around April 12 or 13, 2019, which has since been rebroadcasted.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



Image "rosie eye 2"

SeneGence usage of "rosie eye 2" at Seminar on or around April 12-13, 2019

20   111.   Image 8 is named "rosie name" and was created by Counterclaim
21   Plaintiff Martin and published on or around April 1, 2019. The Image was
22   registered in a group photography registration VA 2-155-246 (Exhibit A) with an
23   effective date of June 19, 2019, within the three-month time period for timely
24   registration and eligible for statutory damages. SeneGence used the image on its
25   massive overhead video screen at SeneGence Seminar on or around April 12 or 13,
26   2019, which has since been rebroadcasted.
27
28

FIRST AMENDED COUNTERCLAIMS OF DEFENDANTS SIARA MARTIN AND SIARA MARTIN, LLC

Image "rosie name"



SeneGence usage of "rosie name" at Seminar on or around April 12-13, 2019

112.   Image 9 is named "sweetpeasiara" and was created by Counterclaim Plaintiff Martin and published on or around May 29, 2018. The Image was registered in a group photography registration VA 2-123-361 (Exhibit B) with an effective date of October 24, 2018. Counterclaim Plaintiff added text as an overlay to the Image.  SeneGence used the image on its massive overhead video screen at SeneGence Seminar on or around April 12 or 13, 2019, which has since been rebroadcasted.

FIRST AMENDED COUNTERCLAIMS OF DEFENDANTS SIARA MARTIN AND SIARA MARTIN, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Image "sweetpeasiara"

SeneGence usage of "sweetpeasiara" at Seminar on or around April 12-13, 2019

113.   Image 10 is named "amethyst swatch" and was created by Counterclaim Plaintiff Martin. The Image was registered in a group photography registration VA 2-155-246 (Exhibit A) with an effective date of June 19, 2019. SeneGence used the image three times in a company distributor training, which has since been rebroadcasted, as detailed and shown in paragraph 117, below.

///

///

///

FIRST AMENDED COUNTERCLAIMS OF DEFENDANTS SIARA MARTIN AND SIARA MARTIN, LLC

1

2

3

4

5                                              Image "amethyst swatch"

6

7

8

9        114.   Image 11 is named "candlelight swatch" and was created by

10   Counterclaim Plaintiff Martin. The Image was registered in a group photography

11   registration VA 2-155-246 (Exhibit A) with an effective date of June 19, 2019.

12   SeneGence used the image three times in a company distributor training, which

13   has since been rebroadcasted, as detailed and shown in paragraph 117, below.

14

15                                              Image "candlelight swatch"

16

17   

18

19

20

21       115.   Image 12 is named "copper rose shimmer swatch" and was created by

22   Counterclaim Plaintiff Martin. The Image was registered in a group photography

23   registration VA 2-155-246 (Exhibit A) with an effective date of June 19, 2019.

24   SeneGence used the image three times in a company distributor training, which

25   has since been rebroadcasted, as detailed and shown in paragraph 117, below.

26   ///

27   ///

28   ///



Image "copper rose shimmer swatch"

116.   Image 13 is named "denim swatch" and was created by Counterclaim Plaintiff Martin. The Image was registered in a group photography registration VA 2-155-246 (Exhibit A) with an effective date of June 19, 2019. SeneGence used the image three times in a company distributor training, which has since been rebroadcasted, as detailed and shown in paragraph 117, below.



Image "denim swatch"

117.   Image 14 is named "garnet swatch" and was created by Counterclaim Plaintiff Martin. The Image was registered in a group photography registration VA 2-155-246 (Exhibit A) with an effective date of June 19, 2019. SeneGence used the image three times in a company distributor training, which has since been rebroadcasted, as detailed and shown in paragraph 117, below.

///

///

FIRST AMENDED COUNTERCLAIMS OF DEFENDANTS SIARA MARTIN AND SIARA MARTIN, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Image "garnet swatch"

118.    Image 15 is named "granite swatch" and was created by Counterclaim Plaintiff Martin. The Image was registered in a group photography registration VA 2-155-246 (Exhibit A) with an effective date of June 19, 2019. SeneGence used the image three times in a company distributor training, which has since been rebroadcasted, as detailed and shown in paragraph 117, below.



Image "granite swatch"

119.    Image 16 is named "moca java swatch" and was created by Counterclaim Plaintiff Martin. The Image was registered in a group photography registration VA 2-155-246 (Exhibit A) with an effective date of June 19, 2019. SeneGence used the image three times in a company distributor training, which has since been rebroadcasted, as detailed and shown in paragraph 117, below.

///
///
///

FIRST AMENDED COUNTERCLAIMS OF DEFENDANTS SIARA MARTIN AND SIARA MARTIN, LLC

Image "mocha java swatch"

120.   Image 17 is named "mulberry swatch" and was created by Counterclaim Plaintiff Martin. The Image was registered in a group photography registration VA 2-155-246 (Exhibit A) with an effective date of June 19, 2019. SeneGence used the image three times in a company distributor training, which has since been rebroadcasted, as detailed and shown in paragraph 117, below.

Image "mulberry swatch"



121.   Image 18 is named "onyx swatch" and was created by Counterclaim Plaintiff Martin. The Image was registered in a group photography registration VA 2-155-246 (Exhibit A) with an effective date of June 19, 2019. SeneGence used the image three times in a company distributor training, which has since been rebroadcasted, as detailed and shown in paragraph 117, below.

///
///
///

1

2

3

4      Image "onyx swatch"

5

6

7

8   122.   Image 19 is named "pink opal shimmer swatch" and was created by

9   Counterclaim Plaintiff Martin. The Image was registered in a group photography

10  registration VA 2-155-246 (Exhibit A) with an effective date of June 19, 2019.

11  SeneGence used the image three times in a company distributor training, which

12  has since been rebroadcasted, as detailed and shown in paragraph 117, below.

13

14

15     Image "pink opal shimmer swatch"

16

17

18

19  123.   Image 20 is named "pink posey swatch" and was created by

20  Counterclaim Plaintiff Martin. The Image was registered in a group photography

21  registration VA 2-155-246 (Exhibit A) with an effective date of June 19, 2019.

22  SeneGence used the image three times in a company distributor training, which

23  has since been rebroadcasted, as detailed and shown in paragraph 117, below.

24

25

26  

27

28                                                          Image "pink posey swatch"

FIRST AMENDED COUNTERCLAIMS OF DEFENDANTS SIARA MARTIN AND SIARA MARTIN, LLC

124.   Image 21 is named "rustic brown swatch" and was created by Counterclaim Plaintiff Martin. The Image was registered in a group photography registration VA 2-155-246 (Exhibit A) with an effective date of June 19, 2019. SeneGence used the image three times in a company distributor training, which has since been rebroadcasted, as detailed and shown in paragraph 117, below.

    Image "rustic brown swatch"

125.   Image 22 is named "sandstone pearl shimmer swatch" and was created by Counterclaim Plaintiff Martin. The Image was registered in a group photography registration VA 2-155-246 (Exhibit A) with an effective date of June 19, 2019. SeneGence used the image three times in a company distributor training, which has since been rebroadcasted, as detailed and shown in paragraph 117, below.

    Image "sandstone pearl shimmer swatch"

d "silver shimmer swatch" and was created by Counterclaim Plaintiff Martin. The Image was registered in a group photography registration VA 2-155-246 (Exhibit A) with an effective date of June 19, 2019. SeneGence used the image three times in a company distributor training, which has since been rebroadcasted, as detailed and shown in paragraph 117, below.

///

FIRST AMENDED COUNTERCLAIMS OF DEFENDANTS SIARA MARTIN AND SIARA MARTIN, LLC

Image "silver shimmer swatch"

127.   Image 24 is named "smoked topaz swatch" and was created by Counterclaim Plaintiff Martin. The Image was registered in a group photography registration VA 2-155-246 (Exhibit A) with an effective date of June 19, 2019. SeneGence used the image three times in a company distributor training, which has since been rebroadcasted, as detailed and shown in paragraph 117, below.



Image "smoked topaz swatch"

128.   Image 25 is named "whisper pink swatch" and was created by Counterclaim Plaintiff Martin. The Image was registered in a group photography registration VA 2-155-246 (Exhibit A) with an effective date of June 19, 2019. SeneGence used the image three times in a company distributor training, which has since been rebroadcasted, as detailed and shown in paragraph 117, below.



Image "whisper pink swatch"

FIRST AMENDED COUNTERCLAIMS OF DEFENDANTS SIARA MARTIN AND SIARA MARTIN, LLC

129.   All Images numbered 10-25 were used in SeneGence's sanctioned training for Australia and New Zealand distributors, as shown below. Each image was used and/or displayed three separate occasions: at least once on July 5, 2019, at least once on July 6, 2019, and at least once on July 7, 2019, constituting three separate infringements per image. Additionally, the training was live streamed via Facebook live as well.

130.



///

///

///

FIRST AMENDED COUNTERCLAIMS OF DEFENDANTS SIARA MARTIN AND SIARA MARTIN, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28









FIRST AMENDED COUNTERCLAIMS OF DEFENDANTS SIARA MARTIN AND SIARA MARTIN, LLC

131.   The Images are original works of authorship fixed in a tangible medium of expression from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device; they are in perspective, orientation, positioning, lighting and other details are entirely original, distinctive, and unique.  As such, the Images are subject matter protectable under the Copyright Act.

132.   Counterclaim Plaintiffs never authorized SeneGence to reproduce, display, or distribute the Images for any usage, especially on the big screen at SeneGence Seminar or in training presentations for distributors.

133.   Counterclaim Plaintiff Martin is the proprietor of the right, title, and interest in and to the copyright in the pursuant to 17 U.S.C. § 201.

134.   The Images have been duly registered with the United States Copyright Office in registrations with effective dates of October 24, 2018, and June 19, 2019.

135.   Counterclaim Defendant SGII, Inc. did not have the authorization of Defendant Martin or the law to reproduce, distribute, display, or create derivative works of the Images.

136.   Counterclaim Defendant SGII, Inc. have not compensated Martin for reproducing and displaying the Images.

137.   Without Martin's authorization, Counterclaim Defendant SGII, Inc. reproduced and publicly displayed Martin's copyrightable works in violation of 17 U.S.C. § 501.

138.   Counterclaim Defendant SGII, Inc.' conduct violates the exclusive rights belonging to Martin under 17 U.S.C. § 106.

139.   All of SeneGence's usages of the Images have come **after** it initiated it's lawsuit against Counterclaim Plaintiffs regarding intellectual property matters.

140.   As Defendants were reproducing, displaying, and distributing the Images between April 18, 2019 and as recently as last week, Martin's claims of

41

infringement are clearly within the three-year statute of limitations period pursuant to 17 U.S.C. § 507(b).

141.   As a direct and proximate result of their wrongful conduct, Defendants have realized and continues to realize profits and other benefits rightfully belonging to Martin for the Images.  Accordingly, Martin is entitled to and seeks an award of actual damages and profits plus attorneys' fees and costs pursuant to 17 U.S.C. §§ 504(b) and 505 for all images.

142.   In the alternative, since Martin timely registered the copyrights in the twenty-one Images, Martin is entitled to and seeks statutory damages for Defendants' infringement of the Images, including attorneys' fees and costs, pursuant to 17 U.S.C. §§ 504(c)(1) and 505.

143.   The infringement by Counterclaim Defendant SGII, Inc. was blatantly willful and performed with knowledge that the reproduction and display of the Images was unauthorized, especially given that they are in pending litigation with the creator of the works; Martin is therefore entitled to the recovery of enhanced statutory damages pursuant to 17 U.S.C. 504 (c)(2).

## SIXTH CLAIM FOR RELIEF

### Misappropriation of Right of Publicity Under Cal. Civ.  Code § 3344

144.   Counterclaim Plaintiffs reallege and incorporate by reference each and every allegation contained within paragraphs 1 through 141, inclusive, as if the same were fully set forth herein.

145.   California law adamantly protects the right of publicity of individuals, specifically the name, voice, signature, photograph, or likeness of an individual.

146.   California Civil Code § 3344 specifically governs "Use of Another's Name, Voice, Signature, Photograph, or Likeness in Advertising or Soliciting Without Prior Consent."

147.   Section A states: "(a) Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner on or in products,

merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods or services, without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable for any damages sustained by the person or persons injured as a result thereof. In addition, in any action brought under this section, the person who violated the section shall be liable to the injured party or parties in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages. In establishing such profits, the injured party or parties are required to prove his or her deductible expenses. Punitive damages may also be awarded to the injured party or parties. The prevailing party in any action under this section shall also be entitled to attorney's fees and costs."

148.   The statute goes on to state that in the instances of photography, that the photograph must be of a "person that is readily identifiable. *Cal. Civ. Code § 3344(b)*. "A person shall be deemed to be readily identifiable from a photograph when one who views the photograph with the naked eye can reasonably determine that the person depicted in the photograph is the same person who is complaining of its unauthorized use." *Cal. Civ. Code § 3344(b)(1)*.

149.   Counterclaim Defendant SGII, Inc. continue to use, even after commencing the FAC in the instant action, Counterclaim Plaintiffs Martin's image on their social media channels specifically the Instagram account.

150.   SeneGence uses its Instagram account to promote its products and distributors, so such usage constitutes using Martin's image in advertising or marketing to sell its products.

151.   Martin does not consent to the usage of her images, especially after having the instant action commenced against her for taking photographs like the very photograph that Counterclaim Defendant has based this suit on.

152.   Martin is easily identifiable as the individual making the complaint.

153.   Counterclaim Defendant's continuing use of such works, on their official social media channels, is a clear violation of Section 3344, specifically regarding Counterclaim Plaintiff Martin's right of publicity.

## SEVENTH CLAIM FOR RELIEF

### Unjust Enrichment

154.   Counterclaim Plaintiffs reallege and incorporate by reference each and every allegation contained within paragraphs 1 through 151, inclusive, as if the same were fully set forth herein.

155.   The elements for a claim of unjust enrichment are "receipt of a benefit and unjust retention of the benefit at the expense of another." (*Lectrodryer v. SeoulBank* (2000) 77 Cal.App.4th 723, 726 .) "The theory of unjust enrichment requires one who acquires a benefit which may not justly be retained, to return either the thing or its equivalent to the aggrieved party so as not to be unjustly enriched." (*Otworth v. Southern Pac. Transportation Co.* (1985) 166 Cal.App.3d 452, 460 [212 Cal.Rptr. 743].)

156.   California courts have further expounded the unjust enrichment cause of action, which sounds in restitution. "A person is enriched if the person receives a benefit at another's expense." *First Nationwide Savings v. Perry*, (1992) 11 Cal.App.4th 1657, 1662 (citing Rest., Restitution, supra, § 1, com. a.). "A benefit is conferred not only where one adds to the property of another, but also where one saves the other from expense or loss." *California Federal Bank v. Matreyek*, (1992) 8 Cal.App.4th 125, 131 [10 Cal.Rptr.2d 58, 61].

157.   Counterclaim Defendant SGII, Inc. have received tangible and real benefits from the work of Counterclaim Plaintiffs. While Counterclaim Plaintiff Martin was a distributor, she created and allowed others, including SeneGence to use her copyrighted work in order to bolster their business and sell products. This is a direct benefit to SeneGence, as they obtained free marketing materials and did

not have to pay a marketing budget.

158.   Additionally, SeneGence was so pleased with Martin's work that they requested that she offer trainings to other distributors to assist them with their photography. All of these efforts increased distributor sales, which in turn increased Counterclaim Defendant's profits.

159.   Counterclaim Defendant now seeks to classify the actions of Martin as unauthorized or illegal in some way, despite previous approval. The images that they have included in their FAC were largely taken and displayed while Martin was a distributor and are now being used to make a claim for trademark infringement. However, there is no requirement of distributors to remove images upon termination of the agreement. SeneGence likely made tens of thousands of dollars from the usage of Martin's images by both Martin, other distributors, and themselves on their official social media channels.

160.   In fact, SeneGence is still using Martin's images and profiting from them, as seen in Claim for Relief Six (Copyright Infringement). They also continue to use her images on their social media platforms, shown below.

161.   By simultaneously condemning the work of Counterclaim Plaintiffs while using their copyrighted works for their benefit (increased sales, lack of spending money for marketing budget), Counterclaim Defendant SGII, Inc. are being unjustly enriched monetarily by increasing revenue and also decreasing costs. They are seeking to classify previously authorized works as unlawful while reaping the financial benefits of said work.

162.   Counterclaim Defendant's continuing use of such works, on their official social media channels, in their training materials for distributors, and even at the annual SeneGence Seminar conference, shows that SeneGence maintains and continues the unjust retention of the benefit at the expense of another, specifically Counterclaim Plaintiffs.

///

### EIGHTH CLAIM FOR RELIEF

**Tortious Interference with Contracts**

163.   Counterclaim Plaintiffs reallege and incorporate by reference each and every allegation contained within paragraphs 1 through 160, inclusive, as if the same were fully set forth herein.

164.   This claim arises under the laws of the State of California.

165.   Counterclaim Plaintiffs operate a website that allows for individuals who wish to support Defendants' art to sign up and become subscribers through a Patreon account.

166.   When such consumers sign up to become subscribers, they are entering into a contractual relationship to a monthly fee of $10 per month until cancellation of the agreement by either Counterclaim Plaintiffs or third party subscribers.

167.   Such subscription constitutes a business relationship between Counterclaim Plaintiffs. Counterclaim Defendant SGII, Inc. are aware of this relationship with third party members of the public, as evidenced by their allegations in the FAC.

168.   Counterclaim Defendant SGII, Inc. are also aware that Counterclaim Plaintiffs do not use any registered trademarks, product packaging in the photography that they offer, but Counterclaim Defendant SGII, Inc. continue to publicly object and interfere with Counterclaim Plaintiffs' and even call out Counterclaim Plaintiffs by name.

169.   In order to discourage members of the public from continuing a business relationship with Counterclaim Plaintiffs, Counterclaim Defendant SGII, Inc. have recently launched a number of initiatives to affect Counterclaim Plaintiffs' business. Counterclaim Defendant SGII, Inc. have started issuing compliance letters to anyone who appears to use photography created by Counterclaim Plaintiffs, likely including those who lawfully subscribe to

Counterclaim Plaintiffs' Patreon. Counterclaim Defendant SGII, Inc. have hosted live workshops to utilize scare tactics by stating in one breath that usage of Counterclaim Plaintiffs' images is prohibited but later admitting that there are no real penalties for usage of such images.

170.   All of these actions have continued while Counterclaim Defendant SGII, Inc. continue to use Counterclaim Plaintiffs' images themselves.

171.   In fact, Counterclaim Defendant SGII, Inc. have hired an individual to create "official" photography for SeneGence, and have admonished those who use Counterclaim Plaintiffs' photography. But simultaneously, Counterclaim Defendant SGII, Inc. have allowed Ryan Halls, their own photographer, to operate the same business as Counterclaim Plaintiffs, selling unauthorized photography **using actual SeneGence registered trademarks**. This has occurred as recently as this month, well after being hired, and can be seen below.

 

///

47

172.   As a direct result of Counterclaim Defendant SGII, Inc.' conduct, Counterclaim Plaintiffs have lost substantial contractual relationships with their subscribers.

173.   By outright attacking Counterclaim Plaintiffs and sending unwarranted compliance letters to third parties as a scare tactic to encourage those individuals to terminate their contractual relationship with Counterclaim Plaintiffs, Counterclaim Defendant SGII, Inc. have solicited and directly caused the termination of a continued business relationship with Counterclaim Plaintiffs.

174.   As a proximate result of Defendants' actions, Counterclaim Plaintiffs have has suffered, and will continue to suffer, damage to its sales, business relations, and reputation.

175.   Counterclaim Defendant SGII, Inc.' acts have been willful, malicious, oppressive, and undertaken with the conscious intent to deprive Counterclaim Plaintiffs of its rights and property, thereby entitling SeneGence to exemplary damages in addition to all other damages sustained thereby.

## NINTH CLAIM FOR RELIEF

### Violation of California Unfair Competition Act, Cal. Bus. & Prof. Code §§ 17200 et seq.

176.   Counterclaim Plaintiffs reallege and incorporate by reference each and every allegation contained within paragraphs 1 through 173, inclusive, as if the same were fully set forth herein.

177.   Counterclaim Defendant SGII, Inc. unlawfully infringed Counterclaim Plaintiff's registered copyrights when they reproduced images in their corporate presentations.

178.   Counterclaim Defendant SGII, Inc. unlawfully infringed Counterclaim Plaintiff's registered copyrights when they created unapproved derivative works using Counterclaim Plaintiff's and images.

179.   Counterclaim Defendant SGII, Inc. unlawfully infringed

48

Counterclaim Plaintiff's registered copyrights when they publicly displayed Counterclaim Plaintiffs' images in their corporate presentations.

180.   Counterclaim Defendant SGII, Inc.' copyright infringement has caused harm to Counterclaim Plaintiffs including a loss of money and harm to Counterclaim Plaintiffs' intellectual property rights.

181.   For these and other reasons, Counterclaim Defendant should be held liable for unfair competition.

182.   Counterclaim Defendant SGII, Inc.' actions were willful and malicious and justify an award of exemplary and punitive damages.

1.   Counterclaim Defendant SGII, Inc.Counterclaim Defendant SGII, Inc.Counterclaim Defendant SGII, Inc.Counterclaim Defendant SGII, Inc.

///

///

///

49

## **PRAYER FOR RELIEF**

WHEREFORE Defendants pray for relief as follows:

1.    That SGII, INC., d/b/a SENEGENCE INTERNATIONAL, INC. takes nothing by way of its FAC;

2.    That the FAC and each and every purported claim for relief therein be dismissed with prejudice;

3.    Entry of a declaratory judgment that Counterclaim Plaintiffs' Photographs do not violate any of Counterclaim Defendant SGII, Inc.'s rights in its trademarks, including pursuant to 15 U.S.C. §§ 1114 and 1125(a), the common law trademark infringement and unfair competition, California Unfair Competition under California Business and Professions Code § 17200, 15 U.S.C. § 1125(c), or any other rights under federal or state law;

4.    Entry of judgement for Counterclaim Plaintiffs on all counterclaims;

5.    Actual damages in an amount to be proven at trial;

6.    That Counterclaim Plaintiffs be awarded enhanced and punitive damages as a result of Counterclaim Defendants' willful conduct;

7.    That Counterclaim Plaintiffs be awarded their costs of suit incurred herein;

8.    That Counterclaim Plaintiffs' be awarded attorneys' fees against Plaintiff under 15 U.S.C. § 1117, this case being exceptional;

9.    Issue an order that Defendants' unauthorized conduct violates Martin's rights under the Federal Copyright Act at 17 U.S.C. §101, et seq.;

10.    Order that Defendants willfully infringed Martin's rights to the Images under the Copyright Act;

11.    Order Defendants to pay Martin all profits and damages in such amount as may be found pursuant to 17 U.S.C. § 504(b) (with interest thereon at the highest legal rate) for SeneGence's infringement of the Images; alternatively, maximum statutory damages in the amount of $30,000 for each infringement

pursuant to 17 U.S.C. § 504 (c)(1); or such other amount as may be proper pursuant to 17 U.S.C. § 504;

12.    Upon a finding that the infringements were willful, award Martin maximum statutory damages in the amount of $150,000 for each of Defendants' infringements of Martin's copyrights in the Images pursuant to 17 U.S.C. § 504 (c)(2); or such other amount as may be proper pursuant to 17 U.S.C. § 504;

13.    Order Defendants to pay Martin its costs of litigation and reasonable attorneys' fees in this action, pursuant to 17 U.S.C. § 505;

14.    Order that Defendants are subject to preliminary and permanent injunctions providing that Defendants shall to deliver to Martin all copies of the Images and all other materials containing such infringing copies of the Images in Defendants' possession, custody or control; and

15.    For such other and further relief as the Court deems just and proper.

1

Dated: September 9, 2019

**HUGHLEY SMITH LAW**
TYRA HUGHLEY SMITH

2

3

 /TYRA HUGHLEY SMITH/
Tyra Hughley Smith
Hughley Smith Law
11271 Ventura Blvd., #226
Studio City, CA 91604
Telephone: (818) 527-2225
Attorney for DEFENDANTS,
SIARA MARTIN and SIARA
MARTIN, LLC

4

5

6

7

8

**CAMUTI LAW GROUP APC**
Nathan B. Camuti
Camuti Law Group APC
33 Brookline
Aliso Viejo, CA 92656
Telephone: (949) 716-5565
Attorney for DEFENDANTS,
SIARA MARTIN and SIARA
MARTIN, LLC

9

10

11

12

13

Attorneys for
Defendants/Counterclaim Plaintiffs
Siara Martin and Siara Martin, LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

52